Roger Sullivan
Allan M. McGarvey
John F. Lacey
McGarvey, Heberling, Sullivan & Lacey, P.C.
345 First Avenue East
Kalispell, MT 59901
(406) 752-5566

Attorneys for Plaintiff

## MONTANA EIGHTH JUDICIAL DISTRICT, CASCADE COUNTY

| | |
|---|---|
| KENNETH BRAATEN, as Personal Representative for the Estate of RHONDA R. BRAATEN, deceased, <br><br> Plaintiff, <br><br> v. <br><br> BNSF RAILWAY COMPANY, a Delaware corporation; JOHN SWING; ROBINSON INSULATION COMPANY, a Montana Corporation for profit; and DOES A-Z, <br><br> Defendants. | **CAUSE NO. DDV-16-0862** <br><br><br> **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

## PARTIES

1. Plaintiff Kenneth Braaten, as Personal Representative for the Estate of Rhonda R. Braaten, deceased, is a resident of Columbia Falls, Montana.

2. Defendant BNSF Railway Company (BNSF) is a corporation organized and existing under the laws of the State of Delaware and is engaged in interstate commerce with its headquarters in Fort Worth, Texas.

3. Defendant John Swing was a managing agent for BNSF in Libby, Montana and is a resident of Lincoln County, Montana.

4. Robinson Insulation Company (Robinson Insulation) is or was a Montana business corporation for profit with its principal place of business in Great Falls, Cascade County, Montana where Robinson Insulation operated a vermiculite expansion plant. Robinson Insulation engaged in conduct that resulted in the accrual of this tort action in Montana.

First Amended Complaint and Demand for Jury Trial          1

**EXHIBIT A**

5.    Does A - Z are corporations or persons, whose identities are unknown at this time, and whose negligence and wrongful acts caused Plaintiff's mesothelioma.

6.    Plaintiff will seek to amend her complaint when the true names and capacities of Does A - Z are ascertained.

7.    Venue in this action is proper in Cascade County, Montana, because at least one of the Defendants, Robinson Insulation, engaged in tortious conduct within Cascade County and is a resident of Cascade County.

8.    This Complaint is filed to protect statutes of limitations.

## GENERAL ALLEGATIONS

9.    In 1963 W.R. Grace & Co. (Grace) purchased an existing vermiculite mine and mill in Libby, Montana (the Mine) from the Zonolite Company (Zonolite), in the process assuming all liabilities of Zonolite. Grace operated the Mine from 1963 until 1990. The vermiculite was intermixed with a highly toxic form of asbestos. The extraction of vermiculite from the ground and processing of it generated substantial airborne dust containing asbestos. The dust was produced at the mine site, as well as in the town of Libby where expansion, bagging, storage and transport facilities were located.

10.    The Plaintiff was a Grace/Zonolite, railroad or logger/lumbermill worker, contractor, homeowner or member/resident of the community of Libby, Montana, and/or the child or spouse of said person, and as such were distinctly exposed to asbestos in unique exposure events and in a wide variety of temporally separated, geographically distinct, and highly differentiated routes and circumstances. While Plaintiff had repeated or continuous exposures, Plaintiff's individual exposure is unique in time, location, form, and degree of asbestos contact, and as a result of which Plaintiff has been diagnosed with asbestos disease. Dates of Plaintiff's residence in the Libby area and exposure, including events of injurious exposure between July 1, 1973 and July 1, 1975 are: 1960-2005.

11.    At all times Plaintiff was ignorant of the nature and extent of the life threatening risks and injury involved, and would not have continued to be exposed to such an environment if she had known the true facts.

First Amended Complaint and Demand for Jury Trial          2

12.     The Grace/Zonolite workers were not provided with coveralls or showers. As a result workers went home and into the community with asbestos dust on their clothing and in their cars, thereby extending the asbestos exposure. Similarly, invisible asbestos fibers from the mining operations infiltrated a broad variety of Libby area work sites, forests, recreation areas, homes, gardens, and numerous other distinct locations, resulting in hundreds of distinct routes and circumstances of exposure.

13.     As a result of failing to control dust from the mining, milling, processing, bagging, transport and a variety of uses of the vermiculite, workers, family members, members of the community, and others were exposed to the highly toxic asbestos.

14.     Without knowledge of the nature and extent of the asbestos hazard, Plaintiff was denied, in the unique circumstances of her exposures, the options of avoiding exposure, demanding protective devices, demanding safer operations, changing jobs, or protecting herself and her family.

## FIRST CLAIM
### Negligence v. BNSF

15.     Paragraphs 1-14 above are incorporated by this reference.

16.     During the dates above stated, Plaintiff resided or remained in proximity to the real property of BNSF and was thereby exposed to asbestos dust from BNSF's property and operations. John Swing was a managing agent for BNSF in Libby, Montana, and as such is separately responsible for acts wrongful in this nature. Allegations herein as to BNSF's conduct and knowledge by this reference specifically include defendant John Swing.

17.     Throughout the years of exposure above stated, the Plaintiff lived in an environment that caused her to be exposed to and to inhale asbestos dust.

18.     At all times Plaintiff was ignorant of the nature and extent of the life threatening risks and injury involved, and would not have continued to remain in such an environment if she had known the true facts.

19.     Without knowledge of the nature and extent of the asbestos hazard, Plaintiff was denied the options of avoiding exposure, demanding dust control or changing

residence.

20.     At all times BNSF knew or should have known of the asbestos in the vermiculite, and knew or should have known of the hazards to human health of asbestos exposure and had a continuing duty to gather information, to prevent toxic dust from collecting upon and escaping from its property, and to warn Plaintiff and others who would be harmed by said dust.

21.     BNSF was negligent, as follows:

(a)     in failing to inquire, study and evaluate the dust hazard to human health;

(b)     in failing to take measures to prevent toxic dust from collecting upon and escaping from its property;

(c)     in failing to warn Plaintiff of the true nature of the hazardous effects of the dust; and

(d)     by acting in concert with Zonolite/Grace.

22.     As a direct and proximate result of the conduct of BNSF as described above, Plaintiff suffered and died from mesothelioma and has incurred the damages alleged herein.

## SECOND CLAIM
## Common Law Strict Liability v. BNSF

23.     Paragraphs 15-22 above are incorporated by this reference.

24.     Defendant BNSF failed to control asbestos contaminated vermiculite used in the operation of their business thereby causing Plaintiff to be exposed to asbestos, an extra hazardous and abnormally dangerous substance.

25.     Defendant BNSF engaged in abnormally dangerous activities thereby causing the release of asbestos contamination and exposure of Plaintiff to deadly asbestos. BNSF's business activities in handling, storing, transporting, loading, and using asbestos and asbestos contaminated products were abnormally dangerous in that:

(a)     said business activities created a high degree of prior, present, and continuing contamination in the form of exceedingly toxic asbestos, which created a high degree of risk of harm to Plaintiff and others;

(b)     there was and is a strong likelihood that the harm resulting from said

business activities and exposure to asbestos is great;

(c)    the risk of harm caused by BNSF's storing, handling, transporting, loading, and using asbestos contaminated vermiculite cannot be reasonably eliminated for those humans living and working in proximity to BNSF's abnormally dangerous business activity;

(d)    said business activities are not a matter of common usage;

(e)    BNSF's abnormally dangerous business activities were carried on within the town of Libby and adjacent areas, which were places that were inappropriate for the release of asbestos contamination; and

(f)    the dangerous attributes of the BNSF's business activities completely outweigh the value of those activities to the community.

26.    The dangers of the BNSF's business activities for the locality where Plaintiff resided, worked, or remained were so great that despite any usefulness of their activities and of the asbestos contaminated vermiculite under its control, BNSF should be required as a matter of law to pay for any harm caused.

27.    BNSF is strictly liable to the Plaintiff for damages caused by Plaintiff's exposure to deadly asbestos caused by BNSF's abnormally dangerous business activities.

28.    As a direct and proximate result of the BNSF's abnormally dangerous business activities, Plaintiff was exposed to unreasonably dangerous and hazardous materials, contracted mesothelioma, died as a result thereof and has incurred the damages alleged herein.

### THIRD CLAIM
### Negligence v. Robinson Insulation

29.    All paragraphs above are incorporated by this reference.

30.    For many years, Defendant Robinson Insulation obtained asbestos contaminated vermiculite from Libby, Lincoln County, Montana. Said asbestos contaminated vermiculite was transported by rail from Lincoln County to Great Falls, Cascade County, Montana, where Defendant Robinson Insulation expanded the asbestos contaminated vermiculite and processed it into various manufactured products.

31.    After expanding the deadly asbestos contaminated vermiculite and processing it into manufactured products, Robinson Insulation sold said vermiculite and

vermiculite products to the J. Neils/St. Regis Champion lumbermill in Libby and to others for use and for resale in Libby, Montana. Said expanded vermiculite and vermiculite products were transported from Great Falls back to Libby and delivered to the said lumbermill and to other sites in Libby.

32. Plaintiff was exposed to Defendant Robinson Insulation's unreasonably dangerous asbestos contaminated products, which Robinson Insulation wrongfully placed in the stream of commerce for use and consumption by the general public.

33. During Plaintiff's period of exposure to asbestos and contaminated vermiculite, which was generated and released by Robinson Insulation's business activities, Robinson Insulation knew that extended exposure to asbestos was unreasonably dangerous and hazardous to an individual's health. Nevertheless, Robinson Insulation concealed and failed to disclose such knowledge to their employees, the public, and the Plaintiff. Robinson Insulation gave no indication that it was unsafe and in fact a serious health hazard for Plaintiff to be exposed to asbestos generated and released by Robinson Insulation's business activities. Plaintiff was at all times ignorant of the nature and extent of the life threatening risk involved in exposure to the asbestos generated and released by Defendant's business activities.

34. Robinson Insulation owed the Plaintiff a duty to act with reasonable care concerning their business operations, so as not to jeopardize her health and welfare from exposure to its asbestos contamination and asbestos products.

35. Robinson Insulation breached its duty of care by negligently, carelessly, and recklessly generating, handling, storing, releasing, disposing of, and failing to control and contain unreasonably dangerous and hazardous asbestos created by and/or resulting from its for profit business operations.

36. Although Robinson Insulation knew or had ample reason to know that its acts or omissions created a high degree of harm to the Plaintiff, it nevertheless deliberately acted in conscious disregard of and indifference to the risk imposed upon the Plaintiff by her continued exposure to asbestos.

37. As a direct and proximate result of Plaintiff's exposure to asbestos-laced

vermiculite generated and released by Robinson Insulation's business activities, Plaintiff suffered and died from mesothelioma and has incurred the damages alleged herein.

## FOURTH CLAIM
### Strict Products Liability v. Robinson Insulation

38.     All paragraphs above are incorporated by this reference.

39.     At times relevant to this action, Defendants Robinson Insulation was engaged in the business of manufacturing, fabricating, modifying, expanding, labeling, distributing, supplying, selling, marketing, packaging, and/or advertising multiple products containing vermiculite. Said vermiculite was laced with deadly asbestos.

40.     Defendant Robinson Insulation knew and intended that the above referenced vermiculite and asbestos contaminated products would be used without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

41.     Defendant Robinson Insulation distributed and/or sold said asbestos-laced vermiculite products to the public, to the Plaintiff, and to one or more of Plaintiff's employers.

42.     Said asbestos-laced vermiculite products were defective and unreasonably dangerous for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death to humans. The defect existed in the said products at the time they left the possession of Defendant Robinson Insulation. Said products did, in fact, cause injury and damage to Plaintiff, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and unreasonably dangerous for use.

43.     Plaintiff did not know of the substantial danger of using said asbestos-laced vermiculite products, nor was said danger readily recognizable by her. Defendant Robinson Insulation further failed to adequately warn of the risk of contamination to which Plaintiff was exposed.

44.     As a direct and proximate result of the unlawful actions of Defendant Robinson Insulation and as a direct and proximate result of exposure to Robinson

Insulation's unreasonably dangerous asbestos contaminated vermiculite products, Plaintiff suffered and died from mesothelioma and has incurred the damages alleged herein.

## FIFTH CLAIM
## Does A-Z

45.     All paragraphs above are incorporated by this reference.

46.     Does A-Z are corporations or persons unknown at this time whose negligence and wrongful acts caused asbestos disease in the Plaintiff. Plaintiff will seek to amend her complaint when the true names and capacities of Does A-Z are ascertained.

## SIXTH CLAIM
## WRONGFUL DEATH

47.     All paragraphs above are incorporated by this reference.

48.     As a direct and proximate result of the actions of Defendants as alleged above, Plaintiff Rhonda Braaten, deceased, suffered from asbestos related mesothelioma and died as a result thereof. The heirs of Rhonda Braaten, deceased, have suffered the loss of her society, care, comfort and support and have incurred damages as alleged herein.

## DAMAGES

49.     All paragraphs above are incorporated by this reference.

50.     As a direct and proximate result of the acts of the Defendants, the Plaintiff has suffered and will suffer:

    a.     Loss of enjoyment of established course of life;
    b.     Loss of services which can no longer be performed;
    c.     Loss of earnings and/or earning capacity;
    d.     Physical, mental and emotional pain and suffering;
    e.     Medical expenses, rehabilitation expenses and related expenses;
    f.     Loss of insurability for medical coverage;
    g.     Loss of care, comfort, society and support; and
    h.     Great grief and sorrow.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for damages against the Defendants as follows:

1.    Reasonable damages for lost enjoyment of established course of life, past and future;

2.    Reasonable damages for loss of services which can no longer be performed;

3.    Reasonable damages for physical, mental and emotional pain and suffering, past and future;

4.    Reasonable damages for medical expenses, rehabilitation expenses, and related expenses incurred to date and reasonably certain to be incurred in the future;

5.    Reasonable damages for loss of the care, comfort, society and support;

6.    Advance payment of past and present medical expenses and special damages not reasonably in dispute;

7.    Reasonable damages for loss of earnings and/or earning capacity;

8.    Reasonable damages for grief and sorrow;

9.    In the case of decedent whose death was caused by the asbestos injury, a separate assessment of damages for the heirs' losses of care, comfort, society and support of the decedent by reason of the wrongful death of their loved one;

10.   For costs of suit; and

11.   For such further relief as is just and equitable under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED this ⁷ᵗʰ day of August, 2017.

McGARVEY, HEBERLING, SULLIVAN
& LACEY, P.C.

By: _____
ROGER SULLIVAN
ALLAN McGARVEY
JOHN F. LACEY
Attorneys for Plaintiff

/
/
/
/

First Amended Complaint and Demand for Jury Trial          9

# CERTIFICATE OF MAILING

I hereby certify that on the _30th_ day of August, 2017, a true and correct copy of the foregoing was served by United States mail, first-class postage prepaid, upon the following:

Katy Alsobrook
Knight Nicastro, LLC
519 Southwest Blvd.
Kansas City  MO  64108

Chad M. Knight
Knight Nicastro, LLC
929 Pearl Street, Suite 350
Boulder  CO  80303

Anthony Nicastro
Steven Williams
Knight Nicastro, LLC
401 North 31st Street, Suite 770
Billings  MT  59101

Judy O'Haire
Judy O'Haire